**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00496-RSE**

**BILL F.** **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
*Commissioner of Social Security* **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

The Commissioner of Social Security denied Bill F.'s ("Claimant's") application for disability insurance benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant filed a Brief and Fact and Law Summary. (DN 13; DN 14). The Commissioner filed a responsive Fact and Law Summary. (DN 18). The time for Claimant to file a reply has expired.

The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 11; DN 12; DN 20).

I. Background

Claimant applied for disability insurance benefits under Title II of the Social Security Act on December 8, 2022. (Transcript, hereinafter, "Tr." 255-58). He claims disability based on anxiety/depression, narcolepsy, arthritis, hearing loss, and ADHD. (Tr. 285-86). Claimant's application was denied at the initial level on May 31, 2023, and again at the reconsideration level on July 26, 2023. (Tr. 147-64).

At Claimant's request, Administrative Law Judge Laurie Porciello ("ALJ Porciello") held a remote administrative hearing on February 6, 2024. (Tr. 48-72). Claimant appeared by telephone with his attorney. (Tr. 50). An impartial vocational expert also testified at the hearing. (*Id.*). Claimant provided the following relevant testimony at the hearing.

Claimant's medical conditions began bothering him in March of 2020, but he did not stop working as an assembly worker for Altec Industries until March of 2022. (Tr. 53-54, 65). He has arthritis in his shoulders and knees but is not currently receiving treatment for that. (Tr. 54-55). Around four or five years ago, Claimant was diagnosed with narcolepsy. (Tr. 55). The medication for narcolepsy, Wakix, helps but causes "bad side effects," including anxiety. (Tr. 55-56). Even with the medication, Claimant says he gets tired a lot during the day and must take an hour nap daily. (Tr. 56). Because he previously had episodes of falling asleep while driving, which have caused multiple accidents, he now drives very little. (Tr. 56-57). Several years ago, Claimant also began noticing hearing loss but when tested his hearing was still "in the normal parameters." (Tr. 57-58).

As for his anxiety and depression, he explains having a hard time concentrating, feeling claustrophobic, having anxiety attacks when he has high emotions, and anger problems. (Tr. 58). He and his wife were arrested for an altercation about two years ago. (*Id.*). He attends marriage therapy with his wife and individual therapy for his anger. (*Id.*). Claimant needs reminders for taking his medication and making it to appointments. (Tr. 59).

After considering Claimant's testimony and the medical records submitted, ALJ Porciello issued an unfavorable decision on June 10, 2024. (Tr. 31-43). She applied the five-step sequential analysis for evaluating adult disability claims from 20 C.F.R. § 404.1520, and found as follows. First, Claimant engaged in substantial gainful activity from his alleged onset date of March 1, 2020

through March 1, 2022, but not following March 1, 2022; therefore, the evaluation would continue for the period following March 1, 2022. (Tr. 33). Second, Claimant has the severe impairments of narcolepsy and osteoarthritis. (Tr. 34-36). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 36-37).

At Step Four, ALJ Porciello found Claimant has the residual functional capacity ("RFC") to perform "medium work" as defined in 20 C.F.R. 404.1567(c), except that Claimant "should not be required to climb ladders, ropes, or scaffolds, and he should avoid more than occasional exposure to hazards including moving machinery and unprotected heights." (Tr. 37-41). Additionally at Step Four, ALJ Porciello assumed "for the purpose of efficiency and this decision only" that Claimant cannot perform his past relevant work. (Tr. 41). Fifth and finally, considering Claimant's age, education, work experience, and RFC, ALJ Porciello found there are jobs existing in significant numbers in the national economy that Claimant can perform. (*Id.*). ALJ Porciello concluded Claimant was not under a disability, as defined in the Social Security Act, from March 1, 2020, through the date of the decision. (Tr. 43).

Claimant administratively appealed ALJ Porciello's denial (Tr. 249-50), but the Appeals Council declined review (Tr. 14-17). At that point, ALJ Porciello's denial became the final decision of the Commissioner, and Claimant sought judicial review from this Court pursuant to § 405(g). (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

## III. Analysis

Claimant submits two claims of error related to ALJ Porciello's RFC assessment. First, Claimant alleges ALJ Porciello failed to properly evaluate his subjective symptoms. (DN 14, at PageID # 693-700). Second, Claimant argues ALJ Porciello failed to properly evaluate the medical opinion of Dr. Michael Whitten in accordance with the regulations. (*Id.* at PageID # 700-706).

A. ALJ Porciello's Evaluation of Claimant's Subjective Symptoms

As part of the RFC assessment at Step Four, an ALJ must evaluate a claimant's subjective allegations of pain. 20 C.F.R. §§ 404.1520c, 404.1529(a). An ALJ must consider all "symptoms, including pain, and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a).

In evaluating a claimant's subjective allegations of pain, the ALJ first must determine whether there are medically determinable impairments that could reasonably be expected to produce the alleged symptoms. Next, if such impairments exist, the ALJ "will consider [the claimant's] statements about the intensity, persistence, and limiting effects of [the] symptoms" and "evaluate [the claimant's] statements in relation to the objective medical evidence and other evidence" in determining whether a claimant is disabled. *Id.* § 416.929(4). In doing so, the ALJ evaluates the claimant's statements against factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), including:

(1) A claimant's daily activities;

(2) The location, duration, frequency, and intensity of pain and other symptoms;

(3) Factors that precipitate and aggravate the symptoms;

(4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;

(6) Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and

(7) Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ is not required to analyze all seven factors and may discuss only those relevant to the alleged symptoms. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

The ALJ's decision must include "specific reasons for the weight given to the individual's symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 510304, at *10. But the ALJ need not use "magic words" so long as it is clear from the decision as a whole why the ALJ reached a specific conclusion. *Lloyd v. Comm'r of Soc. Sec.*, No. 5:23-CV-01166-SL, 2024 WL 2278251, at *14 (N.D. Ohio Apr. 30, 2024). An ALJ's conclusions regarding subjective symptom evidence receive great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

At the outset of her RFC analysis, ALJ Porciello discussed Claimant's hearing testimony regarding his arthritis, narcolepsy, medications, side effects, daily naps, and history of car accidents from falling asleep while driving. (Tr. 37-38). ALJ Porciello then found that Claimant's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 38). ALJ Porciello elaborated that "[g]enerally, the claimant's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with evidence of positive response to treatment, generally normal examination findings during treatment and claimant's self-reported activities of daily living." (*Id.*).

Next, ALJ Porciello went on to thoroughly summarize Claimant's medical records relating to his arthritis and narcolepsy, including discussion on Claimant's treatment (physical therapy), ongoing use of medication, and changes to his medication. (Tr. 38-39). Elsewhere in the RFC,

ALJ Porciello referenced "claimant's self-reported activities of daily living" several times, citing to Exhibit 4F at Page 5 and exhibits 2A and 3A. (Tr. 40).

Claimant takes issue with ALJ Porciello discounting his subjective statements based on his "self-reported daily activities." (DN 14, at PageID # 696). Claimant says that nowhere in the decision did ALJ Porciello identify which self-reported activities she was referring to as inconsistent with his subjective reports. (*Id.*). Additionally, Claimant alleges that ALJ Porciello failed to discuss evidence relating to his activities of daily living (ADLs) from his wife's third-party function report and a fatigue questionnaire he completed. (DN 14, at PageID # 697-98). The ALJ's failure to mention this evidence, Claimant argues, makes it impossible to know how they were considered or how they were consistent with Plaintiff's statements about his symptoms. (*Id.*). To Claimant, overwhelming evidence supports that his ADLs are consistent with his statements regarding his symptoms, but the ALJ offered only a conclusory statement that his subjective allegations are inconsistent with his self-reported ADLs. (*Id.* at PageID # 699). This error cannot be harmless, Claimant explains, because had the ALJ properly evaluated his statements and accepted the limitations therefrom, the RFC would have reflected the need for additional breaks to accommodate naps, which the VE testified would be work-preclusive. (*Id.* at PageID # 699-700).

The Commissioner responds that ALJ Porciello provided several valid considerations grounded in the record when evaluating Claimant's subjective complaints. (DN 18, at PageID # 721). These considerations identified by the Commissioner include ALJ Porciello's findings that: (1) objective medical evidence did not support the degree of limitation alleged and (2) Claimant's ability to independently initiate and complete ADLs was inconsistent with his allegations. (*Id.*).

First, the Court disagrees with Claimant's contention that ALJ Porciello failed to appropriately identify "claimant's self-reported daily activities" when addressing their

consistency. Throughout the RFC, ALJ Porciello referenced Claimant's self-reported ADLs and provided citations to the record to demonstrate their consistency/inconsistency with the other evidence she was discussing. For instance, ALJ Porciello cited to Exhibit 4F at page 5, part of Dr. Whitten's consultative evaluation, to support her conclusions that the State agency consultants' findings were consistent with Claimant's reported ADLs; that one of APRN Laurie Richerson's restrictions was inconsistent with Claimant's reported ADLs; and that Dr. Whitten's consultative examination was inconsistent with Claimant's self-reported ADLs. (Tr. 39-41). ALJ Porciello was referring to the "Capabilities" section of Dr. Whitten's assessment, wherein Dr. Whitten recounted Claimant's reports that "he is able to do the following independently or with minimal assistance: household tasks, hygiene and grooming, manage a budget, prepare meals, and take care of household shopping." (Tr. 555).

Similarly, ALJ Porciello cited to Exhibits 2A (the initial disability determination) and 3A (the reconsideration determination) to support her determination that Dr. Whitten's consultative examination was inconsistent with Claimant's self-reported ADLs. (Tr. 41). Review of Exhibits 2A and 3A reveal the State agency consultants' discussions of Claimant's wife's third-party function report, indicating that Claimant "engages socially, shops, drives, prepares simple meals, does light cleaning, and manages personal care with reminders. Claimant does not manage money . . . Claimant does not go out alone as he falls asleep. Claimant takes care of children and dogs." (Tr. 150, 158). While these representations of Claimant's ADLs did not come from Claimant directly, his wife's representations, and the State agency consultants' recitation of such, are substantially similar to Claimant's self-reported ADLs elsewhere in the record. (*See* 37-38, 53-64; 294-302; 328-330). These citations leave no doubt regarding which of Claimant's reported ADLs ALJ Porciello was referring to throughout her RFC assessment.

ALJ Porciello's same citations disprove Claimant's allegation that ALJ Porciello failed to consider Claimant's wife's third-party function report. Though she did not articulate an analysis of the third-party function report in her decision, ALJ Porciello referenced such a report by citing Exhibits 2A and 3A, where the State agency consultants discussed Claimant's ADLs as reported by Claimant's wife. (Tr. 150, 158). Moreover, even if ALJ Porciello had not cited to this discussion from the SA consultants, the regulations specify that ALJs are not required to articulate how they consider "evidence from nonmedical sources," as they are with "medical opinion(s) and prior administrative finding(s)[.]"[1] 20 C.F.R. § 404.1520c(c), (d). And it well established that an ALJ's "duty to 'consider' the evidence is different than a duty to 'discuss' the evidence." *Kovach v. Comm'r of Soc. Sec. Admin.*, No. 1:25-cv-2506, 2026 WL 1656939, at *6 (N.D. Ohio June 9, 2026) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (quoting *Loral Defense Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999))). ALJ Porciello was not required to provide more analysis than she did regarding Claimant's wife's third-party report.

In the same vein, the Court finds no error in ALJ Porciello's failure to discuss Claimant's "Fatigue Questionnaire." ALJ Porciello stated that she "considered the whole of the evidence" in determining Claimant's RFC. (Tr. 41). Because the ALJ's duty to consider is different from their duty to discuss, the Court finds ALJ Porciello's representation regarding consideration of all evidence of record to be sufficient. Even if ALJ Porciello's failure to discuss the fatigue questionnaire could be considered error, it is harmless. *See Carrero o/b/o/ K.S.C. v. Acting Comm'r*

---

[1] ALJ Porciello specified in the RFC determination that she "has considered, but does not provide articulation herein, about the evidence that is inherently neither valuable nor persuasive in accordance with 20 C.F.R. 404.1520b(c), or the evidence from nonmedical sources in accordance with 20 CFR 404.15020c(d) (e.g., the Third-Party Function Report completed by the claimant's spouse at Exhibit 3)."

*of Soc. Sec. Admin.*, No. 22-2793, 2023 WL 2906171, at *2 (3d Cir. Apr. 12, 2023) (finding harmless error applied where ALJ did not specifically discuss a function report completed by the plaintiff) (citing *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011)); *Hardy v. Comm'r of Soc. Sec.*, No. 24-5440, 2025 WL 1292181, at *4 (6th Cir. Feb. 6, 2025) ("[H]armless error review applies to any failure of the SSA to follow its own regulations.") (citing *Rabbers v. Comm'r of Soc. Sec. Admin*. 582 F.3d 647, 654 (6th Cir. 2009)). The information from the fatigue questionnaire is substantially similar to the testimony Claimant provided during his administrative hearing, which ALJ Porciello recounted at the start of his RFC analysis. (*Compare* Tr. 328-30, *with* Tr. 37-38, 53-64). Accordingly, ALJ's failure to explicitly address the fatigue questionnaire did not affect the ALJ's decision to deny relief.

Review of the ALJ's analysis of Claimant's subjective complaints, on the whole, complies with the regulations and is supported by substantial evidence. ALJ Porciello discussed a number of factors from 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) and made clear how and why she reached her specific conclusion. No error results.

B. ALJ Porciello's Evaluation of Dr. Whitten's Medical Opinion

In formulating a claimant's RFC, the ALJ must evaluate the persuasiveness of the medical opinions in the record. 20 C.F.R. §§ 404.1520c, 404.1529(a). The regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion. *Id.* ALJs instead evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. § 404.1520c(c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.* at (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination, which is known as the "articulation requirement." *Id.* at

(b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.*

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* at (c)(2). To further illuminate this distinction, "supportability" relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their *own* opinion; by contrast, "consistency" relates to the relationship of a medical source's opinion to *other* medical opinions and evidence of record. 20 C.F.R. § 416.920c(c)(1)-(2).

The Sixth Circuit has not defined a specific standard to determine whether an ALJ sufficiently complied with the "articulation requirement." However, courts in this Circuit have applied the requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. Aug. 13, 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation.") (emphasis in original); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-

CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

Dr. Michael Whitten, Ph.D. ("Dr. Whitten") performed a psychological mental status evaluation on Claimant on April 25, 2023. (Tr. 552-556). After conducting a clinical interview, Dr. Whitten opined that Claimant has: "slight" limitation in understanding, remembering, and carrying out instructions for simple repetitive tasks and in sustaining attention and concentration towards performance of simple repetitive tasks; "moderate" limitation in understanding, remembering, and carrying out instructions for complex tasks and sustaining attention and concentration towards performance of complex tasks; and "marked" limitation in tolerating stress and pressure of day-to-day employment and in responding appropriately to supervisors and coworkers in a work setting. (Tr. 554-55).

As required by the regulations, ALJ Porciello evaluated the medical opinions of record in forming Claimant's RFC, including the consultative opinion of Dr. Whitten. After discussing Dr. Whitten's opined limitations, ALJ Porciello determined Dr. Whitten's opinion was "not persuasive." (Tr. 40-41). She explained that Dr. Whitten's opinion was "not wholly consistent" with his own examination findings, including "adequate grooming and hygiene, coherent and normal speech, alertness and orientation, grossly intact thought processes, normal thought content adequate immediate and remote memory, average fund of knowledge and intelligence, and adequate insight and judgment." (*Id.* (citing Ex 4F/2-4)). ALJ Porciello further explained that Dr. Whitten's opinion was "inconsistent with the claimant's self-reported activities of daily living." (*Id.* (citing Exs. 2A; 3A; 4F)).

Claimant concedes that ALJ Porciello adequately considered the supportability of Dr. Whitten's opinion but maintains that she "neglected to adequately address" the consistency factor. (DN 14, at PageID # 704). ALJ Porciello's citation to the initial and reconsideration disability determination explanations that reference only Claimant's wife's function report does not suffice, according to Claimant, because those prior administrative findings do not show Claimant's self-reported ADLs. (*Id.* at PageID # 704-05). Additionally, Claimant asserts Dr. Whitten's opinion is consistent with his ADLs, comparing his opined "marked limitation in tolerating the stress and pressure of day-to-day employment, as well as interacting with supervisors and coworkers" with his wife's reports that he is often tired, grouchy, or angry, that he falls asleep when speaking to people, that he has long pause in conversation, that he needs instructions repeated several times, that he does not handle stress well, and that he has been written up at work for falling asleep and arriving late. (*Id.* at PageID # 705-06). Claimant further takes issue with ALJ Porciello citing to Dr. Whitten's evaluation in his consistency analysis because "consistency seeks to compare the opinion to the other evidence of record not tendered by the source offering the opinion." (*Id.* at PageID # 704-05 (citing 20 C.F.R. § 404.1520c(c)(2))). This error cannot be harmless, Claimant advocates, because had ALJ Porciello properly evaluated and adopted Dr. Whitten's limitations, "a finding of disability would have been appropriate." (*Id.* at PageID # 706).

The Commissioner responds that ALJ Porciello appropriately considered the consistency of Dr. Whitten's opinion by pointing to evidence in the record showing Claimant was not as limited as Dr. Whitten opined, including Dr. Whitten's own evaluation and the prior administrative determinations. (DN 18, at PageID # 723). The Commissioner further explains that the remainder of ALJ Porciello's decision contained analysis relating to Claimant's mental impairments and symptoms that lend support to her finding that Dr. Whitten's opinion was not persuasive. (*Id.* at

PageID # 724). In support, Claimant identifies ALJ Porciello's discussion that Claimant did not receive any specialized mental health treatment, that he has no severe mental impairments, and treatment notes revealing normal mental examination findings. (*Id.* at PageID # 724-25).

The issue is whether ALJ Porciello's statement that Dr. Whitten's opinion was "inconsistent with the claimant's self-reported activities of daily living" (Tr. 40 (citing Exs. 2A; 3A; 4F)) constitutes a sufficient "consistency" analysis under 20 C.F.R. § 404.1520c(c)(2). The Court finds it does.

Contrary to Claimant's position, an ALJ's consistency analysis does not limit the comparison of the medical opinion to only objective medical evidence in the record. Instead, ALJs must compare the medical opinion to "evidence from other medical sources and nonmedical sources in the claim[.]" 20 C.F.R. § 416.920c(c)(2); *see also Hopkins v. Comm'r of Soc. Sec.*, No. 23-5696, 2024 WL 3688302, at *4 (6th Cir. Apr. 9, 2024) ("The regulation provides that the evaluation of the consistency factor involves comparing the opinion to medical and nonmedical sources, including the claimant herself."). This would include medical and non-medical evidence referenced by the physician whose opinion was being evaluated. And, as this Court has noted, "an ALJ may consider the Claimant's reported activities of daily living in evaluating the persuasiveness of medical opinions in the RFC." *Kimberly R. v. Bisignano*, No. 3:25-CV-00624-RSE, 2026 WL 1719436, at *5 (W.D. Ky. June 15, 2026) (citing *Dunlavy v. Comm'r of Soc. Sec.*, No. 24-3333, 2024 WL 4558606, at *3 (6th Cir. Oct. 23, 2024) (upholding ALJ's finding that an opinion identifying various mental limitations was minimally persuasive where ALJ highlighted inconsistencies between the opinion and the claimant's ability to do household chores, garden, and babysit her grandchildren); *Hopkins*, 2024 WL 3688302, at *4 ("[A] claimant's ability to live independently is a valid consideration when evaluating opinion evidence.").

Nor does error stem from ALJ Porciello's citation to the initial and reconsideration disability determinations as evidence "inconsistent with the claimant's self-reported activities of daily living." While Claimant is correct that the State agency consultants noted that no function report from the Claimant was on file, they recounted evidence from Claimant's wife's third-party function report and from other medical records that was inconsistent with Dr. Whitten's opined limitations. (*See* Tr. 150-51, 158-59). Specifically, the State agency consultants discussed Claimant's wife's reports that Claimant "has difficulty managing stress but can manage changes in routine" and "engages socially." The SA consultants further noted that Claimant "appears capable of completing most activities of daily living without assistance and relating appropriately during structured interactions." Though the SA consultants did not actually reference Claimant's self-reported ADLs, no error results because the cited evidence of Claimant's ADLs from his wife and from medical records is substantially similar to Claimant's testimony and reports of his ADLs throughout the record. (*See* 37-38, 53-64; 294-302; 328-330).

Similarly, it was not error for ALJ Porciello to cite Dr. Whitten's own evaluation as inconsistent with Claimant's self-reported ADLs. In his evaluation, Dr. Whitten noted Claimant's reported capabilities: "he is able to do the following independently or with minimal assistance: household tasks, hygiene and grooming, manage a budget, prepare meals, and take care of household shopping." (Tr. 555). That Claimant's self-reported ADLs were listed in Dr. Whitten's report does not mean they could not be used in a consistency analysis. Again, Dr. Whitten's characterization of Claimant's ADLs is substantially similar to Claimant's testimony and reports of his ADLs throughout the record.

Though brief, ALJ Porciello's analysis of the consistency of Dr. Whitten's opinion provided an accurate and logical bridge between the evidence of record and her conclusions. And

because ALJ Porciello considered evidence from the prior administrative determinations, as well as information from non-medical sources, in evaluating the consistency of Dr. Whitten's opinion, she complied with the regulations, and no error results. Yet even if the Court had found error, such error would be harmless because the evidence ALJ Porciello relied on was substantially similar to Claimant's self-reported ADLs, and the outcome would not change. *See Doran v. Wilkie*, 768 F. App'x 340, 354 (6th Cir. 2019) ("[B]ecause our review of administrative agency decisions is subject to harmless-error analysis, 'we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (quoting *Rabbers*, 582 F.3d at 654).

And as the Commissioner points out, an ALJ's decision must be read as a whole; reversal is "not warranted" when the ALJ's conclusion is "sufficiently supported by factual findings elsewhere in the decision that need not be repeated." *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 455 (6th Cir. 2016). Other portions of ALJ Porciello's decision add support to her conclusion that Dr. Whitten's opined limitations were inconsistent with the evidence, including reference to Claimant's lack of specialized mental health treatment (Tr. 35), Claimant's normal findings on mental health examinations (*id.*), and Claimant's behavior during Dr. Whitten's examination (*id.* (citing Tr. 552-556)). For these reasons, the Court finds no reason to disturb ALJ Porciello's decision.

IV. Order

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

September 23, 2026

Regina S. Edwards, Magistrate Judge
United States District Court

Copies: Counsel of Record